IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JUNIUS WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 11-873-CJP |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM and ORDER

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff Junius Williams is before the Court, represented by counsel, seeking review of the final decision of the Commissioner of Social Security denying him Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) Benefits.[1]

## Procedural History

Mr. Williams applied for benefits in November, 2007, alleging disability beginning on October 31, 2007. (Tr. 134, 137). The application was denied initially and on reconsideration. After holding a hearing, ALJ Thomas C. Muldoon denied the application for benefits in a decision dated July 23, 2010. (Tr. 10-19). Plaintiff's request for review was denied by the Appeals Council, and the decision of the ALJ became the final agency decision. (Tr. 1).

Administrative remedies have been exhausted and a timely complaint was filed in this Court.

---

[1]This case was referred to the undersigned for final disposition upon consent of the parties, pursuant to 28 U.S.C. §636(c). See, Doc. 9.

**Issues Raised by Plaintiff** [2]

Plaintiff argues that the ALJ erred in the following respects:

1. He failed to consider the report of Dr. Chapa, who examined plaintiff at the agency's request, in determining plaintiff's residual functional capacity (RFC).

2. He did not properly evaluate the opinion of plaintiff's treating physician, Dr. Nguyen.

**Applicable Legal Standards**

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes.[3] For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).**

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. **42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(C).**

---

[2]Plaintiff listed an issue regarding whether he met the requirements of Listing 12.05(C), mental retardation, in his Statement of Issues. See, Doc. 15, p. 10. However, as he did not offer any argument as to that issue, it is waived. See, *Jones v. Shalala*, **10 F.3d 522, 525, n. 4 (7th Cir. 1993).** In any event, he does not meet the requirements of Listing 12.05(C) because his scores on the Weschler series IQ test are well above the range specified in the Listing. See, Tr. 348.

[3]The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. For all intents and purposes relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

However, limitations arising from alcoholism or drug use are excluded from consideration of whether a claimant is disabled. **42 U.S.C. §423(d)(2)(C); 20 C.F.R. §404.1535.**

"Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. **20 C.F.R. §§ 404.1572.**

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

***Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).**

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. ***Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992); see also, 20 C.F.R. §§ 404.1520(b-f).**

This Court reviews the Commissioner's decision to ensure that the decision is supported

by substantial evidence and that no mistakes of law were made.   The scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." **42 U.S.C. § 405(g)**.  Thus, this Court must determine not whether Mr. Williams is, in fact, disabled, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made.  **See,** ***Books v. Chater*****, 91 F.3d 972, 977-78 (7th Cir. 1996)** (citing ***Diaz v. Chater***, **55 F.3d 300, 306 (7th Cir. 1995)**).

This Court uses the Supreme Court's definition of substantial evidence, i.e, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." ***Richardson v. Perales*****, 402 U.S. 389, 401 (1971).**

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ.  ***Brewer v. Chater*****, 103 F.3d 1384, 1390 (7th Cir. 1997)**.  However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner.  See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

### The Decision of the ALJ

ALJ Muldoon followed the five-step analytical framework described above.  He determined that Mr. Williams had not been engaged in substantial gainful activity since the alleged onset date, and that he had severe impairments of residuals of status post traumatic brain injury with left sided hemiplegia and seizure and depressive disorders, borderline intellectual functioning and alcohol abuse.  He determined that plaintiff's impairments do not meet or equal a listed impairment.

The ALJ found that Mr. Williams had the residual functional capacity to perform a

limited range of work at the light exertional level. Based on evidence from a vocational expert, the ALJ found that plaintiff does not have the capacity to perform his past relevant work. However, he could do the jobs of cashier, food and beverage order clerk, mail room clerk and outside deliverer.

### The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff. As plaintiff's arguments relate only to his physical impairments, the Court will not discuss the mental health records.

1.  **Agency Forms**

Mr. Williams was born in June, 1972, and was about to turn 35 years old when he allegedly became disabled. (Tr. 134). He was last insured for DIB as of March 30, 2008. (Tr. 151, 157).

In a Disability Report, plaintiff said he was unable to work because he had head injuries and was paralyzed on his left side. He said he had stopped working on December 31, 2006, because the restaurant where he was working went out of business. (Tr. 160).

Plaintiff had worked as a cook in a restaurant. He had also worked in a warehouse and for a towing company. (Tr. 175). He completed the 11th grade. (Tr. 165).

2.  **Evidentiary Hearing**

The hearing was originally scheduled for July 7, 2009. It was continued because Mr. Williams was in jail, awaiting trial on a charge of retail theft. (Tr. 27-28).

The hearing was rescheduled for February 18, 2010. Plaintiff was represented by an attorney at the hearing. (Tr. 31).

Mr. Williams testified that he lived with his mother and father. (Tr. 32). He was 6' 2" and weighed 225 pounds. He finished the eleventh grade and did not get a GED. He was in special education classes. (Tr. 33). He had worked as a restaurant cook and as a forklift driver through a temp agency. He had also worked as a tow truck driver. (Tr. 34-35).

Plaintiff testified that he was unable to work because his left side was "messed up." He said that he had been hit in the head with a hammer, which caused him to have a stroke. He testified that he had pain in his head and all down his left side. (Tr. 36). His left side was weak. (Tr. 37). He could stand for 15 or 20 minutes and sit for 20 minutes. (Tr. 37). He sometimes fell down. (Tr. 38). He had problems with depression. He had difficulty concentrating. He had seizures. The last seizure was 2 months before the hearing. He was taking Dilantin for seizures. (Tr. 44).

Plaintiff did not have a medical card at the time of the hearing. He testified that he sometimes could not afford his medications. (Tr. 45-46).

3.     **Evidence from Vocational Expert**

In April, 2010, the ALJ addressed written interrogatories to the VE. The ALJ asked him to assume that plaintiff was able to lift 20 pounds occasionally and 10 pounds frequently, stand or sit no more than 20 minutes without changing position, no climbing ladders, ropes or scaffolds, only occasional stairs or postural activities such as stooping or kneeling, no unprotected heights or dangerous machinery, and limited to simple, repetitive and routine work activity. (Tr. 218). The VE responded that he could not do plaintiff's past work, but would be able to do jobs such as sedentary cashier, food and beverage order clerk, mail room clerk and outside deliverer. (Tr. 221).

4.     **Medical Records**

Mr. Williams was admitted to St. Louis University Hospital in St. Louis, Missouri, on October 31, 2007.  He had a skull fracture and a subarachnoid hemorrhage.  (Tr. 260-261).  He was transferred to SSM Rehab on November 6, 2007.   According to the history and physical note, he had been found sitting on his porch, bleeding from the head.  He had a depressed skull fracture which did not require surgery.  He had a history of polysubstance abuse, including alcohol, crack cocaine and marijuana.  He worked in construction.  (Tr. 355-358).  According to the discharge summary,  he had suffered a traumatic brain injury as a result of an assault with a hammer.  He was discharged on December 14, 2007, with diagnoses of late effects of traumatic brain injury, left hemiplegia (paralysis of one side), right lower extremity monoplegia (paralysis of one part), skull fracture, cervical pain, subarachnoid hemorrhage and behavior disturbance.  On discharge, he was improved somewhat.  He was able to walk with a quad cane for 300 feet.  He sometimes needed assistance for balance while standing.  He was weaned off of seizure medication and had no evidence of seizure activity.  His verbal communications were functional.  He was prescribed Zoloft for depression.  He was to follow up with Dr. Richard Bucholz.  (Tr. 272-273).

Plaintiff was seen as an outpatient by Dr. Nguyen, Director of Traumatic Brain Injury Services at SSM Rehab following his discharge.  On January 14, 2008, plaintiff reported that he still had headaches and left shoulder pain.  He was independent with self-care activities but walked with a  quad cane.  On examination, he had pain on palpation to the left shoulder area.  His muscle strength was 3/5 in the left arm and at the left hip and knee.  He had decreased sensation to pinprick and light touch on the left side.  The impression was that his hemiparesis was improving.  (Tr. 323-324).

Dr. Bucholz saw plaintiff in the neurosurgery department at St. Louis University Medical

School.  On March 6, 2008, Dr. Bucholz discharged him from his care.  On that date, his neurological examination was normal.  Tandem gait was normal.  He was able to perform finger-to-nose and heel-to-shin movements smoothly on both sides.  He had normal motor strength in both his upper and lower extremities.  Sensation was intact.  A CT scan of the head showed a depressed area in the skull with evidence of callous formation.  The contusion was completely resolved.  Plaintiff denied seizure activity or headache.  Dr. Bucholz concluded that he was "doing well."  (Tr. 295-296).

Dr. Vittal Chapa performed a consultative physical examination on May 17, 2008.  Plaintiff told Dr. Chapa that he had headaches and left shoulder pain.  He denied any history of drug or alcohol abuse.  He said that he had decreased strength in his arms and legs, and that he used a cane but sometimes fell because he was unsteady on his feet.  On examination, he could walk 50 feet without a cane.  He was unable to toe walk or heel walk.  He could not tandem walk.  He had left-sided weakness with ataxia.  He had a left foot drop.  He had motor weakness of the left arm and leg.  He had motor incoordination of the left leg.  His left hand grip was 3/5.  (Tr. 301-305).

State agency consultant Young-Ja Kim, M.D., reviewed some of plaintiff's medical records and completed a physical RFC assessment on June 9, 2008.  Dr. Kim noted that the exams by Drs. Bucholz and Chapa conflicted.  Dr. Kim gave controlling weight to Dr. Bucholz' report and concluded that, on Dr. Chapa's exam, plaintiff was "trying too hard to look physically disabled."  He said that plaintiff was "found not credible."  Dr. Kim had records from SSM Rehab, but it is unknown whether he had Dr. Nguyen's note from January, 2008.  Dr. Kim concluded that plaintiff had the RFC to do light work, with no climbing of ladders, ropes or scaffolds.  (Tr. 307-314).

Dr. Bucholz saw plaintiff on July 24, 2008.  Plaintiff complained of headaches and occasional urinary and fecal incontinence.  His neurological examination was normal.  He had full motor strength in his upper and lower extremities.  Sensation was intact.  The plan was to get an MRI and CT.  (Tr. 362-363).  There is no indication that this additional testing was done, or that plaintiff saw Dr. Bucholz again.

Plaintiff returned to Dr. Nguyen on July 29, 2008.  His neurological exam was consistent with left hemiparesis.  His left upper extremity was "flaccid and nonfunctional."  His left lower extremity strength was 2+/5 proximally and 1/5 distally.  He had decreased sensation to light touch in the left leg, and left facial drooping.  (Tr. 325).

A second state agency consultant agreed with Dr. Kim's RFC assessment in August, 2008.  There is no indication that the second consultant had Dr. Nguyen's office notes.  (Tr. 315-317).

Plaintiff returned to Dr. Nguyen in May, 2009.  His neurological exam was again described as being consistent with left hemiparesis.  Upper extremity strength was 3+/5, and lower extremity was 3-/5 proximally and 0/5 at the ankle.  He walked with a limp by "throwing the left leg forward."  Mr. Williams complained of constant left neck pain and headache.  Dr. Nguyen prescribed Vicodin and Elavil.  He also filled out a Disability form.  (Tr. 327).

Mr. Williams was incarcerated in the Illinois Department of Corrections at some point in 2009.  A physical examination was performed at Menard Correctional Center on August 20, 2009.  He had full strength and range of motion in his upper extremities, but his left lower extremity was weaker than the right and he walked with a limp.  (Tr. 419).

By December, 2009, plaintiff was out of prison.  He saw Dr. Nguyen on December 14, 2009.  He complained of pain in his neck radiating into his left shoulder and arm.  He also had

occasional pain in his left leg.  His neurological exam was again said to be consistent with left hemiparesis.  His left upper extremity strength had improved to 4/5, but his left lower extremity strength was 3-/5 for the proximal muscle groups and 0/5 for the ankle muscles.  Dr. Nguyen instructed him on techniques to strengthen his leg and prescribed Vicodin for his pain.  He was to return in six months.  (Tr. 336-337).

Dr. Nguyen completed a form entitled Physical Medical Source Statement at the request of plaintiff's counsel on January 30, 2010.  He indicated that Mr. Williams limped due to left leg weakness and foot drop, and that he should use an ankle/foot orthotic device for his foot drop.  Dr. Nguyen stated that, in an 8 hour day, plaintiff could sit for about 2 hours and could stand and walk each for 90 minutes or less.  He was restricted to lifting less than 10 pounds.  Dr. Nguyen wrote that his left upper extremity pain limited his ability to handle objects.  He also wrote that he was "not sure [Mr. Williams] can tolerate 8 hour workday for now."  (Tr.  340-343).

## Analysis

Plaintiff is correct that the ALJ erred by failing to discuss Dr. Chapa's report and explain the weight he gave it.  The ALJ mentioned the report at Tr. 13, acknowledging that Dr. Chapa found left-sided weakness with ataxia and left foot drop.  He also acknowledged that Dr. Chapa found that plaintiff showed reduced motor strength and grip strength on the left side.  However, while he discussed the weight he gave to the opinions of other doctors at Tr. 16-17, the ALJ did not analyze Dr. Chapa's report in a similar manner.

It is well established that the ALJ may not simply ignore evidence that does not support his conclusion.  ***Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004).**  20 C.F.R. §404.1527(d) requires the ALJ to "evaluate every medical opinion" using a checklist of specified factors.  Dr. Chapa was a consultative examiner, and not a treating doctor, so his opinion was not

entitled to "controlling weight" under §404.1527(d)(2). Regardless, the ALJ was required to evaluate the opinion and to explain his reasons for accepting or rejecting it. *Simila v. Astrue*, 573 F.3d 503 (7th Cir. 2009).

The Commissioner defends the ALJ's decision by pointing out that he considered the opinion of Dr. Kim, and Dr. Kim had considered Dr. Chapa's report. Dr. Kim reviewed records and assessed plaintiff's RFC in June, 2008. Dr. Kim said that he gave controlling weight to Dr. Bucholz' report and concluded that, on Dr. Chapa's exam, plaintiff was "trying too hard to look physically disabled" and was "not credible." (Tr. 307-314). A second state agency consultant agreed with Dr. Kim's assessment in August, 2008. (Tr. 315-317).

The problem with the Commissioner's argument is that it relies on a line of reasoning that was not embraced by the ALJ in his decision. The ALJ said that he "generally accepts the opinions of the state agency medical consultants ...who determined the claimant was limited to light exertional work activity with non-exertional postural and environmental limitations." (Tr. 16). He noted that the state agency consultants' opinions were "supported and consistent with the objective medical evidence of record and corroborated by the unremarkable neurological examinations" conducted by Dr. Bucholz. (Tr. 16).

The Commissioner's argument assumes that the ALJ was adopting Dr. Kim's opinion as to the validity of Dr. Chapa's report. This reads too much into the ALJ's statement. In fact, the state agency consultants' opinions were not consistent with *all* of the objective medical evidence; they were contrary to the opinion of Dr. Chapa as well as the opinion of Dr. Nguyen, who was a treating physician. As is noted above, it is unclear whether either state agency consultant even saw the records of Dr. Nguyen's examinations after plaintiff was discharged from SSM Rehab. The ALJ did not say that he agreed with Dr. Kim's analysis of the merits of

11

Dr. Chapa's opinion.  It is just as likely that the ALJ simply ignored Dr. Chapa's opinion in reaching his decision.  The ALJ's decision cannot be upheld based upon such after-the-fact rationalization.  *McClesky v. Astrue*, 606 F.3d 351, 354 (7th Cir. 2010) (It is **"improper for an agency's lawyer to defend its decision on a ground that the agency had not relied on in its decision...."**); *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010).  Since the ALJ did not give any reason at all for rejecting Dr. Chapa's opinion, his decision cannot be upheld based upon speculation as to his reasons.

Further, it is clear that the ALJ did not accept Dr. Kim's opinion in its entirety.  The ALJ assigned physical limitations in his RFC determination that were not found by Dr. Kim.  Dr. Kim found that plaintiff could do light work.  The only additional limitation assigned by Dr. Kim was that plaintiff could never climb ladders, ropes or scaffolds.  (Tr. 307-314).   In contrast, the ALJ determined that he must be able to change positions after sitting or standing for 20 minutes, could only occasionally climb stairs or ramps, could only occasionally stoop, balance, kneel, crouch, or crawl, and could never be exposed to unprotected heights or dangerous machinery.  (Tr. 14-15).  Since the ALJ did not accept Dr. Kim's opinion in its entirety, it is sheer speculation to assume that he adopted Dr. Kim's stated reasons for rejecting Dr. Chapa's opinion.

The Court notes that the Commissioner does not offer any authority for his suggestion that an ALJ could properly delegate his duty to evaluate and weigh the medical evidence and the claimant's credibility to a state agency consultant.  The ALJ is required to weigh the opinion of a state agency consultant using the factors set out in §404.1527. See,  SSR 96-6p, 1996 WL 374180, at * 2.  Delegating the duty to weigh evidence to a state agency consultant would seem to conflict with the ALJ's duty to weigh the state agency consultant's opinion along with all of

the other medical evidence.

Lastly, the Commissioner argues that Dr. Chapa's opinion was contradicted by Dr. Bucholz' findings in an examination that took place in July, 2008.  Again, this reasoning was not relied upon by the ALJ, and therefore cannot be used to defend the ALJ's decision here.  **McClesky**, **supra; Parker, supra.**

The failure to articulate his reasons for rejecting Dr. Chapa's opinion also affected the ALJ's weighing of Dr. Nguyen's opinion.  The ALJ said that he gave "less weight" to Dr. Nguyen's opinion because it was inconsistent with the physical findings of Dr. Bucholz and "unsupported by the evidence as a whole."  However, the ALJ did not consider whether Dr. Nguyen's opinion was supported by Dr. Chapa's findings.  He also ignored the fact that the medical report from Menard Correctional Center indicated that plaintiff had weakness in his left leg.

While the ALJ does not have to discuss every single piece of evidence, he is required to "build a logical bridge from evidence to conclusion."  **Vilano v. Astrue, 556 F.3d 558, 562 (7th Cir. 2009), and cases cited therein.**   This means that the ALJ cannot simply ignore a line of evidence that contradicts his conclusions.  Rather, he must "confront evidence that does not support his conclusion and explain why it was rejected." **Indoranto v. Barnhart**, 374 F.3d 470, 474 (7th Cir. 2004).

Because of the ALJ's errors, this case must be remanded.  The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that Mr. Williams is disabled or that he should be awarded benefits.  On the contrary, the Court has not formed any opinions in that regard, and leaves those  issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying Junius Williams' application for social security disability benefits is **REVERSED and REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of **42 U.S.C. §405(g).**

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATED:  June 1, 2012.**


s/ Clifford J. Proud
**CLIFFORD J. PROUD**
**United States Magistrate Judge**